UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAW OFFICE OF AZITA MOJARAD, *et al.*,

    Plaintiffs,

      v.

EDUARDO AGUIRRE, in his official
capacity as Director of UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICE,

    Defendant.

Civil Action No. 05-0038 (CKK)

**MEMORANDUM OPINION**
(March 27, 2006)

Plaintiffs – the Law Office of Azita Mojarad, WHSP Customer Care, Inc., and National

Auto Body Parts Warehouse – filed a Complaint for Declaratory and Injunctive Relief and Petition

for Writ of Mandamus on January 7, 2005 seeking to enjoin Defendant, Eduardo Aguirre, in his

official capacity as Director of United States Citizenship and Immigration Service ("USCIS"), from

refusing to accept H-1B visa petitions.  Plaintiffs further sought a ruling that Defendant's

interpretation of 8 C.F.R. § 214.2(h)(8)(ii), which establishes the procedures for issuance of the H-

1B visa petitions, is wrongful.  Following a conference call with this Court on January 12, 2005,

Plaintiffs agreed to suspend their initial preliminary injunction claim in favor of expedited discovery

and the anticipated filing of cross-motions for Summary Judgment.  On March 2, 2005, Plaintiffs

filed a Motion for Summary Judgment, while Defendant filed a Motion to Dismiss or in the

Alternative for Summary Judgment.  Oppositions and Replies to the initial motions were filed on

March 16, 2005 (Plaintiffs) and March 17, 2005 (Defendant) and once again on March 28, 2005 by

each party.  Moreover, Plaintiffs filed a Motion to Strike the Declaration of Steven P. Bucher on

March 16, 2005, which Defendant opposed on March 29, 2005.

Upon a searching examination of all the pleadings, the attached declarations and exhibits, the relevant case law, and the entire record herein, the Court shall grant Defendant's Cross-Motion for Summary Judgment and shall deny Plaintiffs' Motion to Strike the Declaration of Steven P. Bucher.

## I: BACKGROUND

Plaintiffs allege that the Defendant is improperly administering the H-1B visa program, Pls.' Mem. of P. & A. in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mem.") at 2, which allows American employers to temporarily hire foreign nonimmigrant workers to work in "speciality occupation[s]" or as "fashion model[s] of distinguished merit and ability."  8 U.S.C. § 1101(a)(15)(H)(i)(B) (2000).  In preceding years, the cap on H1-B non-immigrant aliens was as high as 195,000, *see* 106 P.L. 313(a)(2000), but has been set indefinitely at 65,000 since FY 2004.  *Id*. § 1184(g)(1)(A).  Of those 65,000 visas, 1,400 are reserved for Chilean nationals and 5,400 for Singaporean nationals, *Id*. § 1184(g)(8)(B), so 58,200 visas are available for nonimmigrant workers from elsewhere.[1]  § 1184(g)(1)(A).

An employer seeking to hire a nonimmigrant employee must file an H-1B petition with the USCIS and pay a $185 fee, 8 C.F.R. § 214.2(h)(2)(1)(A) (2005), and provide evidence that the position being filled falls within an applicable speciality occupation and that the alien is qualified for

---

[1] Several categories of nonimmigrant workers are excluded from the cap by statute or USCIS policy, including:  employees of higher education institutions or related nonprofit entities, 8 U.S.C. § 1184(g)(5); employees of nonprofit or governmental research organization, *id*.; the spouses and children of aliens with H1-B status, *id*. § 1184(g)(2); and those employees who already have H1-B status and are seeking to change their employers or the terms of their employment, or are working concurrently on a second H-1B petition.  Def.'s Mot. to Dismiss or in the Altern. for Summ. J. ("Def.'s Mot. to Dismiss"), Ex. 1 (Decl. Of Steven P. Bucher) (hereinafter, "Bucher Decl.") ¶ 8.

that position.[2]  Def.'s Mot. to Dismiss, Ex. 1 (Bucher Decl.) at ¶ 4.  The USCIS typically considers

the petitions in the order in which they are received, *id*. ¶ 5; however, employers can opt to use the

Premium Processing Service, under which the USCIS may adjudicate the petitions within fifteen

days in exchange for a $1000 fee.  8 C.F.R. § 103.2(f)(1) (2006).  Petitions can be filed as early as

six months prior to the first day of the next fiscal year, when the H-1B visa or immigration status

itself can actually be granted.  Def.'s Mot. to Dismiss., Ex. 1 (Bucher Decl.) ¶ 9.  Once a petition is

granted, the eligible employee can obtain the H-1B visa or corresponding H-1B status in one of three

ways:  (1) aliens already living inside the United States may simply apply to the USCIS for a change

in immigration status to H-1B; (2) Canadian nationals can receive H-1B status at any Port of Entry

from the Department of Homeland Security, U.S. Customs and Border Protection; or (3) all other

aliens outside the United States, can apply at a U.S. consulate or embassy of the Department of

State.  *Id*. ¶ 6.

Plaintiffs bring this challenge to USCIS procedure based on their thwarted attempts to

employ nonimmigrant workers in FY 2005.  *Id*. at 1.  On September 30, 2004 and October 2, 2004,

the Plaintiffs separately submitted petitions for H-1B visas,[3] *id*., Ex. A (Pls.' I-129 petitions)*, via the*

Premium Processing Service.  *See* Pls.' Resp. to Def.'s Mot. to Dismiss, Ex. B (Pls.' Letters and

Checks to USCIS).  On October 1, 2004 – the first day of FY 2005 – however, the USCIS

––––––––––––––––––––

[2] Before an employer can seek H-1B visa for a prospective nonimmigrant employee, it must make various declarations in a Labor Condition Application with the Department of Labor.  8 C.F.R. 214.2(h)(4)(i)(B) (2000).

[3] The Law Office of Azita Mojarad sought to hire Khalil Asna Ashary, an Iranian citizen; WHSP Consumer Care, Inc. sought to hire Saeed Mohammadi, an Iranian citizen; and National Auto Body Parts Warehouse sought to hire Huey-Jen Chang, a citizen of Taiwan and a B-2 nonimmigrant at the time of the petition, and Reza Shahsana and Babak Taghatfarsa, Iranian citizens.  *Id*., Ex. A (Pls.' I-129 petitions).

announced that it would no longer accept any H-1B petitions as of the close of business on that day, because its projections indicated that it had received enough petitions to meet the FY 2005 cap; therefore, all petitions received subsequent to October 1, 2004 would be returned unprocessed.  Pls.' Mot. for Summ. J., Ex. F. (October 1, 2004 USCIS Press Release).  Preceding its October 1, 2004 announcement, the USCIS announced on September 2, 2004 that, as of August 18, 2004, it had already received 45,000 H-1B petitions for FY 2005.  Pls.' Compl., Ex. B (September 2, 2004 USCIS Press Release).  As such, Plaintiffs' applications and checks for the registration and premium processing fees were returned unprocessed, along with a letter dated October 7, 2004, advising Plaintiffs that H-1B petitions were no longer being accepted for FY 2005.  Pls.' Mot. for Summ. J. at 1; Ex. B (October 7, 2004 letter from USCIS).

The dispute in this case concerns the manner in which the Defendant observes and enforces the statutory cap on H-1B visas or immigration status.  *See* Pls.' Mot. for Summ. J. at 1-2.  Plaintiffs allege that the Defendant departs from the codified requirements for the H-1B program by ceasing to consider petitions once the USCIS determines that it has received sufficient petitions to satisfy the statutory cap.  *Id*.  Instead, Plaintiffs argue based on statutory language and Congressional intent that the USCIS is required to continue processing petitions until the maximum permissible number of nonimmigrant workers have actually obtained an H-1B visa or received H-1B status and they are therefore entitled to summary judgment.  *Id*.  Defendant counters that this case should be dismissed because—it contends—this Court lacks subject matter jurisdiction, based on its claims that the case is moot and the Plaintiffs lack standing to bring this case.  Def.'s Mot. to Dismiss at 6, 8.  Alternatively, Defendant claims that it is entitled to summary judgment because its administration of the H-1B program is based on a reasonable interpretation of the governing statutes, and is therefore deserving of judicial deference.

4

## II: LEGAL STANDARDS

A.       *Motion to Dismiss per Rule 12(b)(1)*

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1).  In general, a motion to dismiss under Federal Rule of Civil Procedure 12(b) should not prevail "unless plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." *Kowal v. MCI Commun. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  A court may appropriately dispose of a case under 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Artis v. Greenspan*, 223 F. Supp. 2d 139, 152 n.1 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment") (citing *Greenberg v. The Life Ins. Co. of Virginia*, 177 F.3d 507, 515 (6th Cir. 1999)).  At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

B.      *Motion for Summary Judgment*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202  (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted).  "Mere

allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper

motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The

adverse party must do more than simply "show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986). Instead, while the movant bears the initial responsibility of

identifying those portions of the record that demonstrate the absence of a genuine issue of material

fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is

a *genuine issue for trial*.'" *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in

original).

### III: DISCUSSION

This case presents the Court with three issues, two of which are jurisdictional nature and the

third concerning the legal merits of the case itself. The Court will address: first, whether this case is

moot; next, whether the Plaintiffs have standing to bring this case; and finally, the Defendant's

construction of the challenged statute itself

A.   *Defendant's 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

1.   <u>Mootness</u>

Defendant argues that this Court no longer has subject matter jurisdiction in this matter

because there is no controversy between the parties and consequently the case is moot. Def.'s Mot.

to Dismiss at 6. Defendant contends that the supposed controversy arises only because of Plaintiffs'

alleged incorrect interpretation of the statutory scheme for the H-1B visa program; the Plaintiffs

were denied consideration of their H-1B visa petitions only because they were received after the

announced cut-off date, and were—simply put—too late in seeking H-1B visas for their employees.

*Id.* at 7. Therefore, the controversy was moot from the start because no more visa petitions were to

be considered.  *Id*.  Moreover, Defendant notes that at the time it sought dismissal for want of subject matter jurisdiction, 59,265 H-1B visas had been issued by the Department of State from the pool of 58,200, and therefore it was also forbidden by statute from issuing any more H-1B visas at that time.[4]  *Id*.

In contrast, Plaintiffs assert that Defendant had already demonstrated its willingness to exceed the statutory cap for H-1B visas and therefore could do so for Plaintiffs as well.  Pls.' Resp. to Def.'s Mot. to Dismiss at 2-3.  Plaintiffs further claim that the case should proceed even if the initial controversy is moot, because (1) this is the type of controversy that falls within the exception to mootness limitation known as "capable of repetition, yet evading review"; (2) the D.C. Circuit has held in some circumstances that a controversy can be considered continuing when an allegedly illegal policy is ongoing, even when the initial action complained of is moot; and (3) the fact that they are seeking a declaratory judgment excludes them from dismissal for mootness.  Id.  After careful consideration, the Court finds that this case does not fall within any of these possible exceptions, and is therefore moot.

Adjudication by federal courts is limited by Article III of the Constitution to "actual, ongoing controversies."  *Honig v. Doe*, 484 U.S. 305, 318, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).  "A case is moot if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  *Pharmachemie B.V. v. Barr Labs.*, 276 F.3d 627, 631 (D.C. Cir. 2002) (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)).  Mootness doctrine dictates that

---

[4] This number does not include visas which may have been issued by U.S. Customs and Border Protection, or those which USCIS may have issued to aliens already living inside the United States who were changing their immigration status to H-1B.  *Id*.

"Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantive controversies admitting of specific relief through a decree of a conclusive character. . . ." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). This limitation on federal courts remains for the entire duration of a case's judicial proceedings. *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990).

On its face, the instant case is indisputably moot. For the purpose of assessing justiciability, the Court considers the crux of Plaintiffs' sought relief, i.e. consideration of their H-1B petitions for FY 2005.[5] Pls.' Mot. for Summ. J. at 12. Even if, as Plaintiffs allege, Defendant should have considered their H-1B petitions when they were sent in October 2004, Pls.' Mot. for Summ. J. 9-10, the Defendant notes that the statutorily imposed limit of 58,200 H-1B visas for citizens of all nations but Singapore and Chile had been exceeded for FY 2005 as of March 2, 2005. Def.'s Mot. to Dismiss at 7. This Court cannot order the Defendant to grant an H-1B visa to Plaintiff if it is unable to do so otherwise. *See Nyaga v. Ashcroft*, 323 F.3d 906, 913, 916 (11th Cir. 2003) (per curiam). Moreover, FY 2005 has ended as of September 30, 2005, and therefore no more visas could be issued for that period, even if the cap had not been exceeded. Therefore, exceptions aside, there is no remaining controversy "admitting of specific relief through a decree of a conclusive character" that this Court can address. *Lewis*, 494 U.S. at 477, 110 S.Ct. 1249.

---

[5] Plaintiffs argue that this case is not moot because they seek declaratory relief, and the Declaratory Judgment Act affords this Court continued jurisdiction on that basis alone. Pls.' Resp. to Def.'s Mot. to Dismiss at 5-6. However, the Declaratory Judgment Act "is not an independent source of federal jurisdiction; [it] is only available if a judicially remediable right already exists." *C & E Servs., Inc. of Wash. v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960)) (internal quotation marks omitted)).

However, the mootness limitation is excepted for situations deemed "capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). To be considered "capable of repetition, there must be a reasonable expectation or demonstrated probability that the same controversy will recur involving the same complaining party." *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 229-30 (D.C. Cir. 2005) (quoting *Murphy*, 455 U.S. at 482, 102 S.Ct. 1181) (internal quotation marks omitted).  "Under the evading review prong, the question is whether 'the challenged activity is *by its very nature short in duration*, so that it could not, or probably would not, be able to be adjudicated while fully live.'" *Pharmachemie B.V.*, 276 F.3d. at 633 (D.C. Cir. 2002) (quoting *LaRouche v. Fowler*, 152 F.3d 974, 978 (D.C. Cir. 1998)) (emphasis in original).  "[B]oth Supreme Court and circuit precedent hold that orders of less than two years' duration ordinarily evade review." *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996).

With respect to whether this case "evades review," the facts before the Court illustrate that the nature of the alleged controversy is such that it could virtually never be resolved before the issue became moot by its own terms.  By the time Plaintiffs' H-1B petitions were returned, the Defendant had already predicted that it had received sufficient H-1B visa petitions to meet the FY 2005 statutory allotment:  a prediction that clearly came to pass, as the Department of State alone had in fact issued H-1B visas in excess of the cap of March 2, 2005.  Def.'s Mot. To Dismiss 7.  Since petitions are handled in the order in which they are received, *id*., Ex. #1 (Bucher Decl.) ¶ 5,  and a court would be loathe to push Plaintiffs' to the head of the line for the purposes of granting relief in this sort of case, once the H-1B petition process presents a controversy within the purview of Article

III, it already is moot because there is nothing a court could do to affect the rights of the litigants.[6]

Moreover, even if – in a practically inconceivable scenario – Plaintiffs had filed H-1B petitions on

April 1, 2004, the first day when petitions could be reviewed for FY 2005, Def's Mot. to Dismiss,

Ex. # 1 (Bucher Decl.) ¶ 8, Plaintiffs were denied consideration of their petitions, and the statutory

cap of H-1B visas was never reached before the end of FY 2005 (September 30, 2005) when the

visas would cease to be available, the period of time in which the case would be justiciable is only

eighteen months.  Therefore, assessed against the standard that a situation can typically be

considered to "evade review" when it lasts less than two years, this case plainly fits within that

category.  *Burlington N. R.R. Co.*, 75 F.3d at 690.

   The more difficult question that must be answered to determine if this case falls within this

exception is whether it can be fairly labeled "capable of repetition." by these parties.[7]  Precedent in

the United States Supreme Court and D.C. Circuit offers a somewhat bewildering array of standards

by which to assess the likelihood necessary to determine whether an issue is capable of repetition.

---

[6] Plaintiffs did file their H-1B visa petitions through the "Premium Processing Service," Pls.' Resp. to Def.'s. Mot. to Dismiss at 4, which guarantees the petitioner adjudication of its petition for one of several visas within fifteen calendar days for a supplemental fee of $1000; otherwise, the fee is refunded.  8 C.F.R. § 103.2(f)(1).  However, nothing in the statute indicates that the Premium Processing Service would permit, let alone compel, the USCIS to disregard its usual procedures for considering the visa, aside from expediting adjudication.  *Id.*  Therefore, if the USCIS has concluded that it is by statute permitted to suspend considering visa petitions for a given fiscal year on an announced date, there is no reason to believe that utilizing the Premium Processing Service could or should allow a petitioner to avoid that deadline.  In the present case, Plaintiffs' fees for the Premium Processing Service were returned along with their standard H-1B petition fees and forms, and there is no indication, statutory or otherwise, that any petitioner submitting an H-1B petition after the cut-off date through the Premium Processing Service should be treated any differently.  So presuming the legality of instituting a cut-off date for petitions, even in a situation like the instant one where the Plaintiffs used the Premium Processing Service, courts would have no basis for ordering the USCIS to accept petitions received after the announced date.

[7] The Supreme Court's definition of what it is, precisely, that must be repeated has been described in various ways; the D.C. Circuit has concluded that it is best described as "issues or wrongs" that must be repeated.  *PETA v. Gittens*, 396 F.3d 416, 423 (D.C. Cir. 2005).

*See, e.g. PETA v. Gittens*, 396 F.3d 416, 423 (D.C. Cir. 2005) (quoting *Weinstein v. Bradford*, 423 U.S.147, 147, 96 S.Ct. 347, 348, 46 L.Ed.2d 360 (1975) ("[f]or a controversy or wrong to be 'capable of repetition,' there must be at least a '*reasonable expectation* that the same complaining party would be subjected to the same action again")) (emphasis added); *Spirit of the Sage Council*, 411 F.3d at 229-30, (quoting *Murphy*, 455 U.S. at 482, 102 S.Ct. 1183) ("[f]or an injury to be considered capable of repetition, there must be a *reasonable expectation* or *demonstrated probability* that the same controversy will recur involving the same complaining party")) (emphasis added) (internal quotation marks omitted); *Doe v. Sullivan*, 938 F.2d 1370, 1379 (D.C. Cir. 1991), (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400, 398, 100 S.Ct. 1202, 63 L.E.2d 479 (1980) ("[w]e recognize . . . the 'flexible character of the Art[icle] III mootness doctrine' . . . . It is enough, in a case of this order, that the litigant 'faces *some likelihood* of becoming involved in the same controversy in the future.'")) (emphasis added); *Honig*, 484 U.S. at 318, 109 S.Ct. 592 ("[i]n the present case, we have jurisdiction if there is a *reasonable likelihood* that respondents will again suffer the deprivation . . . that gave rise to this suit") (emphasis added); *id.*, n.6 ("'our concern in these cases . . . involving potentially moot claims, was whether the controversy was *capable* of reptition and not . . . whether claimant has demonstrated that a recurrence of the dispute was more probable than not"). Given the recent nature of the D.C. Circuit's ruling in *Spirit of the Sage Council v. Norton*, it is appropriate to apply the "reasonable expectation or demonstrated probability" standard here. 411 F.3d at 229-30.

Assessing whether the "capable of repetition, yet evading review" mootness exception applies in a given case requires precisely defining the alleged wrong. *See PETA*, 396 F.3d at 422 - 23. In the instant case, Plaintiffs' claim is that they were deprived of the opportunity for

consideration of their H-1B visa petitions, filed after the cut-off date instituted because of the

Defendant's alleged illegal application of 8 C.F.R. § 214.2(h)(8)(i).  Therefore, the likelihood that

Plaintiffs will once again face this issue depends on whether they will seek H-1B visas in the future

for prospective employees and be exposed to the possibility that this issue will arise.  *See City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 107-108, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (holding

that the plaintiff's attempt to seek an injunction to stop the use of chokeholds during traffic stops

could not be considered  "capable of repetition, yet evading review" because the chances that

plaintiff himself would be subjected to another chokehold were too remote).  Plaintiffs, however,

make no showing that there is any expectation or likelihood that they will once again encounter this

controversy with the USCIS.  Indeed, an analysis indicates that Plaintiffs have not demonstrated that

the controversy before this Court is not moot, and therefore this case must be dismissed for want of

subject matter jurisdiction.[8]

---

[8] In other ways, this controversy could fit squarely into the "capable of repetition category."
Some cases, for example, alleged to be capable of repetition present attenuated fact patterns that
make their repetition highly unlikely.  In *PETA v. Gittens*, the plaintiff attempted to participate in a
one-time public arts display sponsored by the District of Columbia, and on appeal the Defendant
sought to avoid a holding that the case was moot through the "capable of repetition" exception.  *See*
396 F.3d at 421.   The Court rejected this argument, finding that the case was "dependent upon a
series of facts unlikely to be duplicated in the future," and thus not sufficient to satisfy the
reasonable expectation of repetition.  *Id.* at 424.   The instant controversy, on the other hand, could
be repeated:  as long as the Plaintiffs applied for an H-1B petition between the date when the USCIS
discontinues processing the petitions and the date when the statutory cap of visas issued is ultimately
reached, the controversy would occur again.  Pls.' Resp. to Def.'s Mot. to Dismiss at 4.  The
recurrence of this controversy could be more likely and predictable than others deemed to satisfy this
prong of the "capable of repetition, yet evading review" exception to mootness doctrine.  *See Honig*,
484 U.S. at 318-19, 108 S.Ct. 592 (finding reasonable expectation that a controversy between a
disabled student and a school district seeking to exclude him from a program based on his behavior
was likely to recur given the nature of the plaintiff's disability, the plaintiff's continued eligibility
for the services offered, and the school district's continued desire to exclude disabled students with
behavioral problems); *see also Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147
(1973) (finding that case was not moot because, where pregnancy is at issue in a controversy, the
limited length of gestation and the fact that a woman can get pregnant is sufficient to qualify as

In their argument that this case is capable of repetition yet evades review, Plaintiffs identify a hypothetical scenario in which this controversy could be repeated next year. Pls.' Resp. to Def.'s Mot. to Dismiss at 4. However, they fail to identify any reasonable expectation or demonstrated probability that this will happen *to them*. They do not claim to have ever used the H-1B visa program – successfully or not – in the past, and do not definitively declare an intention to use the program in the future. Moreover, while the Plaintiffs bristle at the notion that a solution to this controversy could simply be to file their H-1B petitions earlier, *id.* at 4, they give no reason why this Court should reasonably expect that they could or would not do so in the future, knowing as they do now that failing to file early can lead to the USCIS's refusal to consider filing their petitions. If the Plaintiffs represented that they petitioned for H-1B employee visas in the past and were similarly unsuccessful, or had concrete plans to seek H-1B visas in the future and had a compelling reason for being unable to file their petitions earlier in the process, they might have established the requisite expectation of repetition. However, they did not, and therefore Plaintiffs fail to demonstrate that this case falls within the "capable of repetition yet evading review" exception to mootness.

Finally, the Plaintiffs err in asserting that this case presents the sort of non-moot controversy presented in *Payne Enterprises, Inc. v. United States*. 837 F.2d 486, 490-91 (D.C. Cir. 1988). In that case, the defendant attempted to argue that the controversy was moot because they had voluntarily ceased the offending conduct, both in the instant case and ongoing. *Id.* at 490-91. Voluntary cessation of Defendant's conduct has long been a recognized exception to mootness, *id.* at 491, but it obviously does not apply in the instant case, since Defendant expresses no intention to alter the H-1B petition process. Moreover, the plaintiff in *Payne Enterprises* made frequent use of

---

"capable of repetition, yet evading review").

the agency procedure it was challenging, which no doubt assisted the court in concluding that there was a reasonable expectation that the controversy could be repeated. *Id.* at 490, 492. As such, *Payne Enterprises* is not controlling here.

Accordingly, given that this case is moot and does not fall within any recognized exception to mootness, the Court grants Defendant's Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. However, the Court will go on to consider, *arguendo*, Defendant's claim that Plaintiffs do not have standing to bring this case, as well as the underlying dispute about the H-1B visa petition process itself.

        2.    <u>Standing</u>

For this Court to have subject matter jurisdiction over a case, the Plaintiffs must satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). As this Circuit has framed it, "[t]o secure constitutional standing the plaintiffs must show injury in fact that is fairly traceable to the defendant's action and redressable by the relief requested." *Animal League Def. Fund, Inc. v. Espy*, 29 F.3d 720, 723 (D.C. Cir. 1994) (internal quotation marks and citations omitted). The first component, injury in fact, demands "an invasion of a concrete and particularized legally protected interest." *McConnell v. FEC*, 540 U.S. 93, 227, 124 S.Ct. 619, 157 L.E.2d 491 (2003). Second, causation requires "a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant." *Lujan*, 504 U.S. at 560-61, 112 S.Ct. 2130 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Finally, redressibility means that "it must be 'likely,' as opposed to merely 'speculative,' that the injury 'will be redressed by a favorable decision.'" *Id.* (quoting *Simon*, 426 U.S. at 38, 43, 96 S.Ct. 1917). Furthermore, Plaintiff must establish

prudential standing to sue: a requirement rooted in "judicially self-imposed limits on the exercise of

federal jurisdiction." *See Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281

(1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

Among other requirements, prudential standing demands "that a plaintiff's grievance must arguably

fall within the zones of interest protected or regulated by the statutory provision or constitutional

guarantee invoked in that suit." *Id*.

Here, Defendant contends that the Plaintiffs do not have standing to bring the instant case,

and therefore this Court does not have subject matter jurisdiction. Def.'s Mot. to Dismiss at 9.

Specifically, Defendant asserts that Plaintiffs do not have a "concrete and particularized injury that

is fairly traceable to Defendants' conduct," and that Plaintiffs' claimed injury cannot be redressed.

*Id*. at 9-10.  Plaintiffs claim in response that their injury was caused by  Defendant's allegedly

illegal management of the H-1B petition process, and that Defendant's demonstrated willingness to

exceed the statutory limits on H-1B visas proves that they could have been granted redress. Pls.'

Mem.. at 7-10.

As with mootness, it is not apparent that Plaintiffs present a controversy over which this

Court has subject matter jurisdiction.  Although Plaintiffs indisputably present a concrete and

particularized injury – namely their failure to have their H-1B visa petitions considered – the injury

does not seem fairly traceable to Defendant's conduct, and moreover it is no more than speculative

that a favorable decision for Plaintiffs would redress their injury.

The standing problem inherent in Plaintiffs' controversy is the revelation that the USCIS

reached (and in fact exceeded) its statutory cap on H-1B visas, solely by adjudicating the remaining

petitions it had received by the cut-off date it established for FY 2005.  Def.'s Mot. to Dismiss, Ex. 1

(Bucher Decl.) ¶¶ 15, 16.  As a preliminary matter, then, even if the Defendant administered the H-

16

1B petitioning process in the manner that Plaintiffs contend it must, the number of requisite visas would have already been granted by the time Plaintiffs' petitions were considered, and they would therefore have been summarily rejected.[9] *Id*. at 9.  Therefore, this injury is fairly traceable not to Defendant's behavior, but rather to the date when Plaintiffs filed their petitions; more precisely, Plaintiffs' injury is traceable to their choice to wait until *after* petitions sufficient to fill and exceed the statutory cap of H-1B visas were filed before they submitted their applications.

Likewise, this controversy is also not sufficiently redressable to satisfy the standing requirements.  *Simon*, 426 U.S. at 38, 43, 96 S.Ct. 1917.  Even if this Court were to agree with the Plaintiffs' proposed method for administering the H-1B petition process, there is no evidence to indicate that this would increase the Plaintiffs' likelihood of adjudication of its petitions when they file after the USCIS has received enough petitions to grant the maximum permissible number of visas.  If Plaintiffs had produced evidence to demonstrate that a significant number of accepted H-1B petitions were not ultimately converted to visas or are otherwise revoked, then institution by the USCIS of their proposed system for administering the petition process could have substantially improved the possibility that their injury could be redressed.  As it stands, however, there is nothing on the record to indicate that, even if Plaintiffs were successful in challenging the legality of Defendant's administration of the H-1B petition process, it would have redressed their injury.

---

[9] A caveat to this is the fact that, as discussed above, Plaintiffs utilized the Premium Processing Service, Pls.' Resp. to Def.'s Mot. to Dismiss at 4, which promises quicker adjudication of its petitions.  8 C.F.R. § 103.2(f)(1) (2005).  However, the extent of the "guarantee" is only that, if the petitions are not adjudicated within fifteen days, the petitioner is entitled to a refund.  *Id*.  The program does not offer any guarantee that the petitioner will be granted an H-1B visa at the expense of those who submitted their petitions well in advance, or any similar enhanced right to consideration.  *Id*.

Therefore, even if Plaintiffs had survived dismissal for mootness, it is unlikely they could

have established, based on the record before this Court, that they have standing to bring this case.

B.      *Plaintiffs' Motion to Strike the Declaration of Steven P. Bucher*

Also before the Court is Plaintiffs' Motion to Strike the Declaration of Steven P. Bucher, the

Deputy Director of Service Center Operations at the USCIS.  *See* Pls.' Mot. to Strike Bucher Decl.;

*see also* Def.'s Mot. to Dismiss, Ex. 1 (Bucher Decl.).  Plaintiffs contend that Bucher's Declaration

should be stricken "pursuant to Rule 12 of the Federal Rules of Civil Procedure" because:  (1) the

petitioners, on January 12, 2005, agreed to hold their Motion for a Temporary Restraining Order/

Preliminary Injunction in abeyance pending an expedited discovery process; (2) Plaintiffs' counsel

requested various documentation and support regarding the H-1B visa program on January 13,

2005; (3) the USCIS provided certain information to Plaintiffs, but contested some information as

being "far beyond what we anticipate to be necessary for the expeditious resolution of this case" in a

January 25, 2005 letter; (4) while the USCIS provided Plaintiffs with the Declaration of James

Woodrow Fitzsimmons during this process, the Fitzsimmons Declaration contained "no reference to

the number of H-1B visas that had actually been issued, nor little or any reference to USCIS'

procedures in complying with the congressional cap"; and (5) only at the summary judgment stage

were Plaintiffs provided this information, in the attached Bucher Declaration.  *See* Pls.' Mot. to

Strike Bucher Decl. at 1-2.

Plaintiffs argue that this submission was an "ambush," as "[c]ounsel for Petitioners had no

opportunity to validate this information through a possible deposition of Steven P. Bucher, nor were

counsel for Petitioners afforded any opportunity to address the information contained within this

Declaration prior to and within Petitioners' Motion for Summary Judgment."  *Id*. at 3.  Contending

that "[t]he willful withholding of such information in the Declaration has prejudiced Petitioners in

precluding them from completely establishing heir case within the agreed upon discovery schedule," Plaintiffs assert that Bucher's Declaration should be stricken from the record. *Id.*

Multiple problems exist with Plaintiffs' Motion to Strike. <u>First</u>, although Federal Rule of Civil Procedure 12(f) allows the Court to strike from a "pleading" any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter in order to avoid the time, effort, and expense necessary to litigate spurious issues, Rule 7(a) clarifies that a "pleading" encompasses a complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint, or third-party answer. *See* Fed. R. Civ. P. 12(f); Fed. R. Civ. P. 7(a). As such, by its plain language, Rule 12(f) – the rule relied upon by Plaintiffs – cannot be used to strike an affidavit or declaration. *See Aftergood v. CIA*, 355 F. Supp. 2d 557, 564-65 (D.D.C. 2005) (Rule 12 cannot be used to strike a declaration); *Transam. Leasing, Inc. v. La Republica de Venezuela*, 21 F. Supp. 2d 47, 55-56 (D.D.C. 1998) (stating that declarations "are not pleadings subject to a motion to strike pursuant to Rule 12(f)"); *see also Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 868 (1st Cir. 1997) (noting that Rule 12(f) has "no applicability" to affidavits).

<u>Second</u>, to the extent that Plaintiffs' Motion could be construed as a request for sanctions pursuant to Federal Rule of Civil Procedure 37, Plaintiffs' request would also be without merit. Rule 37(b)(2) of the Federal Rules of Civil Procedure permits a court to issue such orders "as are just" to sanction a party who fails to obey an order to provide or permit discovery, including a discovery order under Rule 26, governing discovery generally, and Rule 35, governing orders for independent physical or mental examinations. *See* Fed. R. Civ. P. 37(b)(1). Such sanctions may include taking certain facts as established, prohibiting the introduction of certain evidence, striking pleadings or parts thereof, staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof and/or rendering a judgment by default against the

disobedient party. *See* Fed. R. Civ. P. 37(b)(2); *Bonds v. Dist. of Columbia*, 93 F.3d 801, 807-08

(D.C. Cir. 1996), *cert. denied*, 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); *Shepherd

v. Am. Broadcasting Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995).  The possible sanctions set out in

Rule 37(b)(2) are not mutually exclusive; the court may impose several of the specified sanctions at

the same time. *See* 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal

Practice and Procedure* §§ 2284, 2289 (2d. ed. 1994).  The imposition of the number and type of

sanctions employed under Rule 37(b)(2) is left to the discretion of the trial judge. *See id.* § 2284

("With a rule as flexible as Rule 37, inevitably a broad discretion must be given the trial judge with

regard to sanctions.").

     However, the Court is limited in its ability to sanction parties pursuant to Federal Rule of

Civil Procedure 37(b)(2).  The D.C. Circuit has held that "'[a] production order is generally needed

to trigger Rule 37(b).'" *Shepherd*, 62 F.3d at 147 (quoting *Attn'y Gen. v. The Irish People, Inc.*,

684 F.2d 928, 951 n.129 (D.C. Cir. 1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d

1015 (1983)); *see also* Jamie S. Gorelick, Stephen Marzen & Lawrence Solum, *Destruction of

Evidence* § 3.4, at 74 & n.23 (1989 & Supp. 1995) ("[f]ederal court decisions . . . unanimously

agree that sanctions pursuant to Rule 37 may not be awarded absent violation of a court order").  As

such, in order to sanction a party pursuant to Rule 37(b)(2), the Court must identify a specific

discovery order that was actually violated.

     Here, while counsel for Plaintiffs might not have agreed with the extent of the production

provided by USCIS on January 25, 2005, Plaintiffs filed no objection to that production with this

Court.  In the absence of any motion to compel during the discovery process or production order by

this Court, Federal Rule of Civil Procedure 37(b)(2) provides no avenue of possible redress for

Plaintiffs.  Had Plaintiffs wished to depose individuals within USCIS or desired to obtain further

information, they should have acted within the applicable discovery period by filing a motion with this Court.

Third, Federal Rule of Civil Procedure 56(b) provides that a defending party may move at any time "without or without supporting affidavits for a summary judgment in the party's favor." Fed. R. Civ. P. 56(b).  With respect to the form of such affidavits, the Federal Rules provide that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  Here, Plaintiffs have not argued that the Bucher Declaration fails to comply with Rule 56(e); indeed, Mr. Bucher – under penalty of perjury – make assertions regarding the functioning of the H-1B visa program based solely on his personal knowledge as the Deputy Director for Service Center Operations at USCIS.  *See* Def.'s Mot. to Dismiss, Ex. 1 (Bucher Decl.) ¶ 1.  As such, the USCIS has properly relied upon the Bucher Declaration in supporting its arguments to dismiss and/or for summary judgment, and Plaintiffs have articulated no proper basis upon which to strike the Bucher Declaration.  *Cf. Abrams v. Commc'ns Workers of Am.*, Civ. No. 87-2816(RCL), 1991 WL 247792, at *1 (D.D.C. Nov. 8, 1991) (noting that instead of a Rule 12 motion to strike a declaration, the "proper course of action for plaintiffs is to argue that defendant is relying on irrelevant information when they file their opposition to defendant's motion").

Fourth, Plaintiffs' argument that they have been unfairly prejudiced by the "willful withholding" of the information contained within the Bucher Declaration, *see* Pls.' Mot. to Strike Bucher Decl. at 3, is belied by the fact that in their Opposition, Plaintiffs rely repeatedly on the Bucher Declaration in making their arguments.  *See, e.g.*, Pls.' Resp. to Def.'s Mot. to Dismiss at 2, 4-5, 7, 9.  Plaintiffs' heavy reliance on information that they alternatively seek to strike undermines their claim of unfair prejudice, given the fact that Plaintiffs have used the information provided in an

optimal manner to support their position.

  <u>Fifth</u>, and finally, while not explicitly asserted by Plaintiffs in their Motion to Strike, Plaintiffs' motion could possibly be viewed as an implicit motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure for further discovery.  Rule 56(f) provides that a court "may refuse the application for [summary] judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had," if it "appears from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition."  Fed. R. Civ. P. 56(f).  Courts are afforded substantial discretion in ruling on requests for additional discovery pursuant to Rule 56(f).  *See Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002); *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997); *see also Messina v. Krakower*, --- F.3d ----, 2006 WL 538175, at *6 (D.C. Cir. Mar. 7, 2006) ("We review a district court's refusal to grant a Rule 56(f) request under an abuse of discretion standard.").  Here, the parties crafted their own discovery and briefing schedules, deciding for themselves the proper scope of exchanged materials.  While Plaintiffs now contend that they should have been granted an opportunity to depose Mr. Bucher, they do not "state[] concretely" what further information – if any – is needed or would be obtained as support for their Opposition.  *See Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989); *see also Messina*, 2006 WL 538175, at *6 ("We will not find an abuse of discretion where the requesting party has offered only a 'conclusory assertion without any supporting facts' to justify the proposition that the discovery sought will produce the evidence required.") (citations omitted).

  Moreover, even *assuming* arguendo that Plaintiffs could somehow garner information from Mr. Bucher that would aid their arguments with respect to mootness and standing, their request would still be futile, as the Court <u>cannot</u> say that the USCIS is administering the H-1B visa program

in an arbitrary and capricious manner.  Jurisdictional issues aside, the actual alleged controversy in

this case is Plaintiffs' dispute with the administration of the H-1B petition process, which reaches the

Court through cross-motions for summary judgment filed by Plaintiffs and Defendant.  The crux of

Plaintiffs' claim is that the USCIS is administering the H-1B petition process in a manner that is

inconsistent with the governing statute and regulations and unlawfully disregards Congressional

intent.[10]  Pls.' Mot. for Summ. J. at 4-7.  Defendant cross-claims for summary judgment on the basis

that its regulation of and methodology for administering the H-1B visa program are reasonable, and

therefore entitled to the Court's deference.  Def.'s Mot. to Dismiss at 17 -20.[11]

When reviewing an agency's construction of a statute it administers, the court must first

determine if Congress has made clear its intention with respect to the precise issue being challenged.

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d

694 (1984).  Where Congress makes its intention clear, "the inquiry is at an end; the court "must

give effect to the unambiguously expressed intent of Congress."  *FDA v. Brown & Williamson*

*Tobacco Corp.*, 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000).  When Congress has

explicitly delegated authority, the gap-filling regulations enacted by the administering agency "are

---

[10]  In their pleadings before this Court, Plaintiffs appear to be laboring under the misconception that 8 C.F.R. § 214.2(h)(8)(ii) is a statute enacted by Congress.  Rather, the statute enabling this program which Congress approved is 8 U.S.C. § 1101(a)(15)(h)(i), a part of the Immigration and Nationality Act.  The provisions cited by Plaintiffs in their pleadings are the Department of Homeland Security's administrative promulgation of the statutory scheme enacted by Congress.  Therefore, this Court's analysis of whether the USCIS is giving legally sufficient effect to Congressional intent must necessarily focus on the statutes, rather than the administrative codification of those statutes.

[11]  While this Court is well aware that courts in general should not the address the merits of a controversy if the plaintiff lacks standing or if the issue is moot, this case – due to Plaintiffs' arguments regarding the Bucher Declaration and the desire to depose Bucher – is a bit of an anomaly.  In order to determine if further discovery would be futile, and therefore Rule 56(f) motion inapposite, the Court must at least touch on the actual merits of this case.

23

given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."

*Chevron*, 467 U.S. at 843-44, 104 S.Ct. 2778.  If Congress has not addressed the issue, the

"reviewing court must respect the agency's construction of the statute so long as it is permissible."

*Brown & Williamson*, 529 U.S. at 132, 120 S.Ct. 1291.  "Such deference is justified because . . . of

the agency's greater familiarity with the ever-changing facts and circumstances surrounding the

subjects regulated."  *Id*.  When reviewing agency action under the Administrative Procedure Act, the

Court will only "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(a).

    With respect to the H-1B visa program, Defendant correctly observes that statutory

parameters are scant.  Def.'s Mot. to Dismiss at 11-12.  Specifically, Congress:  (1) defines those

who are eligible for H-1B visas, 8 U.S.C. § 1101(a)(15)(H)(i)(B) (2000); (2) establishes the

statutory cap of 65,000 H-1B visas per year, *id*. § 1164(g)(1)(a); (3) sets aside 6,800 of those visas

for Singaporean and Chilean nationals, *id*. § 1184(g)(8)(B); and (4) exempts certain classes of

aliens from the statutory cap *id*. § 1184(g)(2), (5).  Therefore, even presuming that the

Congressional intent is, as Defendant claims, for exactly 65,000 visas to be utilized at all times,[12]

Pls.' Mot. for Summ. J. at 6, Congress is completely silent with respect to how this should be done.

    As such, this Court's examination of Defendant's administration of the H-1B petition

process is by necessity a deferential one.  *See Chevron*, 467 U.S. at 842-43, 104 S.Ct. 2778.  At the

---

[12] While the Plaintiff strenuously argues that it is Congress' intent that the maximum number
of H-1B visas be issued, Pls.' Mot. for Summ. J. at 6, 8-9, it is not at all clear that this is the case,
particularly in light of the fact that Congress has allowed the number of permissible H-1B visas to
lapse back to 65,000 from a high of as much as 195,000.  8 U.S.C. § 1164(g)(1)(a).  Nevertheless,
given that Congress through its silence is delegating the details of this precise issue – administration
of the H-1B petition process – to the Department of Homeland Security, it is unnecessary to consider
Congress' intentions with respect to the H-1B visa program generally.

outset, the Court notes as a practical matter that the means employed by the Defendant to administer

this program resulted in the issuance of 59,265 H-1B visas for FY 2005, Def.'s Mot. to Dismiss, Ex.

1 (Bucher Decl.) ¶ 17, a number that exceeds the statutory cap.  While this may well represent a

departure from Congressional intent, it is certainly not the discrepancy alleged by the Plaintiffs.  The

unchallenged facts show that the Defendant manages the H-1B petition process in a manner

designed to maximize H-1B visas issued in an equitable fashion:  it constantly monitors the number

of petitions H-1B granted and still pending, and refuses to accept any more immediately when it

realizes that it has enough on-hand to satisfy its statutory allotment, in accordance with projections it

makes based on previous years.  *Id.* ¶¶ 10-12.  Moreover, the Defendant's tallies incorporate denied

petitions and unissued visas, further ensuring that the USCIS accepts as many visas as is

permissible.  *Id.* ¶ 12.  Indeed, Defendant establishes a strict-cut off date, rather than utilizing the

method urged by Plaintiffs, because doing so avoids unfairly penalizing petitioners due to

circumstances outside their control (such as the method employed for mailing the petitions, slower or

quicker processing times at various H-1B processing facilities, and the like), and protects the USCIS

from becoming "significantly oversubscribed and [having to] reject and refund fees on several

hundred thousand applications."  *Id.* ¶¶ 9, 10.  Procedural considerations such as these are just the

reason that Congresss often acts interstitially, leaving the details to the agencies that are on the front

lines of administering programs and consequentially far more familiar with their intricacies and

potential pitfalls.  *See Brown & Williamson*, 529 U.S. at 132, 120 S.Ct. 1291.  To that end, it is

plain that the Defendant's administration of the H-1B petition process is sufficiently in compliance

with its governing statutes to satisfy the highly deferential *Chevron* analysis.[13]

---

[13] Plaintiffs note that "courts interpreting immigration statutes should resolve any ambiguity
in favor of the alien," *Evangelical Lutheran Church in Am. v. INS*, 288 F. Supp. 2d 32, 41 (D.D.C.

Furthermore, the Plaintiffs cannot establish that the Defendant's administration of its codified regulations is arbitrary and capricious, as alleged. Pls.' Mot. for Summ. J. at 5. An agency's rule will be considered arbitrary and capricious:

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). As discussed above, Defendant is not acting in a matter that is arbitrary, capricious, or unlawful, but is rather incorporating the knowledge gained by past administration of this and like programs to achieve Congress' objectives in an efficient manner. *See Cobell v. Norton*, 428 F.3d 1070, 1074 (D.C. Cir. 2005) (stating that under APA review an agency is ordinarily entitled to "a high degree of deference" to interpretation of regulations, "including its ideas on the appropriate trade-off between absolute accuracy and cost (in time and money)").

Therefore, even assuming *arguendo* that this Court were to find that this case was not moot, and that Plaintiffs had standing, the Defendant's Motion for Summary Judgment would still be granted, as its administration of the relevant program is neither arbitrary nor capricious. As such, because Plaintiffs' Motion to Strike – if considered a discovery request pursuant to Rule 56(f) – would ultimately be futile, it must be denied. Furthermore, given that such a request is not supported by Rule 12(f), falls outside of the purview of Rule 37(b)(2), is improper under Rule 56(e), and is illogical given Plaintiffs' extensive reliance on the Bucher Declaration, the Court shall deny Plaintiffs' Motion to Strike the Bucher Declaration.

---

2003), and therefore if this Court were to find the statutes in question ambiguous, they should be construed in Plaintiffs favor. Pls.' Mot. for Summ. J. at 11. However, since the court does not find the statutes ambiguous, it is unnecessary to turn to the canons of statutory construction.

**IV: CONCLUSION**

For the reasons set forth above, the Court shall grant the Defendant's Motion to Dismiss or in the Alternative for Summary Judgment; deny Plaintiffs' Motion for Summary Judgment; and deny Plaintiffs' Motion to Strike the Declaration of Steven P. Bucher.  An Order accompanies this Memorandum Opinion.

Date:   March 27, 2006

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge